# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| DAVID BISHOP, | Case No. 19-CV-420 (NEB/ECW) |
| Plaintiff, | |
| v. | ORDER ON MOTION FOR JUDGMENT ON THE PLEADINGS AND MOTION |
| ABBOTT LABORATORIES and DOES 1-25, | FOR LEAVE TO AMEND |
| Defendants. | |

David Bishop sued Abbott Laboratories, Inc. and Michael Basnight in California state court for alleged violations of the California Fair Employment and Housing Act, Cal Gov't Code §§ 12900, *et seq.* ("FEHA") and common law wrongful termination in violation of public policy. Abbott Laboratories, Inc. removed to the District Court for the Central District of California. After Bishop filed an amended complaint substituting Abbott Laboratories ("Abbott") for Abbott Laboratories, Inc. as the sole named corporate defendant, the District Court for the Central District of California transferred venue to this Court. Abbott now moves for judgment on the pleadings [ECF No. 57], contending, among other things, that it was not Bishop's employer at the time of the alleged violations and cannot be held liable for the acts of Bishop's employer. Bishop opposes Abbott's motion. Bishop also seeks leave to file a second amended complaint adding Abbott's

1

subsidiaries St. Jude Medical, LLC ("LLC") and St. Jude Medical S.C., Inc. ("SC") as defendants. [ECF No. 61.] Abbott opposes the amendment on futility grounds. For the reasons stated below, this Court GRANTS Abbott's motion for judgment on the pleadings and GRANTS in part and DENIES in part Bishop's motion for leave to amend.

## BACKGROUND

The Court draws the following background from the pleadings, accepting as true all facts pleaded by Bishop and construing all reasonable inferences from the pleadings in his favor. *See Corwin v. City of Independence*, 829 F.3d 695, 699 (8th Cir. 2016).

### I. Bishop's employment with SC ends

Bishop began his employment with SC in July 1999. [ECF No. 15 ("First Amended Complaint" or "FAC") ¶¶ 8, 13.] In 2012, he transferred to the Global Education Department in Austin, Texas. (FAC ¶ 15.) Although the Department is in Austin, Bishop continued to work at SC's location in Sylmar, California, traveling to Austin on occasion for teaching purposes. (FAC ¶ 15.) Michael Basnight became his supervisor in early 2014. (FAC ¶ 16.)

Bishop received a diagnosis of transverse myelitis in 2015. (FAC ¶ 17.) Among other things, this disorder causes significant pain. (FAC ¶ 17.) Bishop explained his condition to Basnight and another supervisor and told Basnight that he could not travel extensively within a 36-hour period. (FAC ¶¶ 18–19.)

2

Bishop and Basnight traveled to Austin, Texas, for a conference In August 2016. (FAC ¶ 20.) Bishop experienced significant pain and discomfort throughout the conference. (FAC ¶ 21.)

On August 22, 2016, Bishop and Basnight had a confrontation while Bishop was experiencing severe pain. (FAC ¶¶ 22–25.) The argument culminated in Bishop asking Basnight if he would leave him alone if Bishop quit. (FAC ¶ 26.) Basnight told Bishop that he would not accept Bishop's resignation. (FAC ¶¶ 26–27.) Bishop returned to his hotel room and fell asleep. (FAC ¶ 28.) He woke to a call from Meghan Nelson, Senior HR Generalist, who called to say that Basnight had notified his supervisor that Bishop wanted to quit and that they had decided to accept Bishop's resignation. (FAC ¶ 28.) In the following days, Bishop repeatedly told SC representatives that he had not intended to resign and that he wished to stay employed by SC. (FAC ¶¶ 28–33.)

On August 29, Bishop sent Nelson an email reaffirming that he did not want to end his employment, and that he had repeatedly tried to resolve the issue. (FAC ¶ 34.) On August 31, he received a letter stating that his last day of work would be August 31. (FAC ¶ 35.)

II. **Abbott creates LLC and acquires SC**

In January 2017, Abbott acquired SC's parent corporation, St. Jude Medical, Inc,

("SJMI").[1] [*See* ECF No. 71-2 at 5; FAC ¶ 7.] Abbott completed the acquisition by merging SJMI with two of its wholly owned subsidiary corporations. [*See* ECF No. 71-2 at 5.] The wholly owned subsidiary resulting from that merger process became LLC. [*See* ECF No. 71-2 at 5; FAC ¶ 7.] By the end of the merger process, LLC was SC's corporate parent. [*See* FAC ¶ 7.] SC is now a wholly owned subsidiary of LLC and LLC's sole member is Abbott. [*See* FAC ¶ 7.]

III. **Bishop sues Abbott in California**

On August 29, 2017, a year after the events in Austin, Bishop filed a complaint with California's Department of Fair Employment and Housing ("DFEH") against Abbott and Michael Basnight. [ECF No. 64 ¶ 3]. In that complaint, Bishop claimed that he has a disability, that his employer did not discuss accommodations with him, did not provide him with accommodations, and terminated him claiming that he had resigned. [ECF No. 64-1, Ex. A.] He amended his DFEH complaint in May 2019 to add LLC and SC as respondents. [ECF No. 64-1, Ex. C.]

On August 15, 2018, Bishop sued Abbott Laboratories, Inc. and Basnight for alleged violations of FEHA in California state court. [*See* ECF No. 1-2.] Abbott

---

[1] Together with the pleadings, the Court relies on Abbott's public Securities and Exchange Commission ("SEC") filings for this background, specifically Abbott's Form 8-K, which it may judicially notice. *See, e.g.*, *Horizon Asset Mgmt., Inc.* v. *H&R Block*, 580 F.3d 755, 761 (2009) (taking judicial notice of defendant's public SEC filings).

4

Laboratories, Inc. removed the case to federal court, asserting the existence of diversity jurisdiction under 28 U.S.C. § 1332. [*See* ECF No. 1.] Bishop filed an amended complaint substituting Abbott for Abbott Laboratories, Inc. as the sole named corporate defendant. [*See* ECF No. 15.]

Abbott then moved to dismiss under *forum non conveniens* and, in the alternative, sought to transfer venue to this District. [*See* ECF No. 17-1 at 1.] In support of its motion, Abbott argued that the employment agreement Bishop had signed with SC contained a forum-selection clause requiring disputes to be brought "in a Minnesota State or Federal Court located in Ramsey County, Minnesota." (*Id.* at 2–3.) In arguing this motion, Abbott claimed that it could enforce the employment agreement as an affiliate of SC. (*Id.* at 3.) The District Court for the Central District from California agreed that Abbott was an affiliate of SC and therefore could enforce the forum-selection clause in Bishop's employment agreement with SC. (ECF No. 27 at 7–8.) It then transferred venue to this Court and denied Abbott's motion to dismiss as moot. [*See* ECF No. 27 at 9.]

IV. **In Minnesota, Abbott seeks dismissal and Bishop seeks to amend**

After the case was transferred to this Court, Abbott filed an answer to Bishop's amended complaint. [*See* ECF No. 39.] Abbott, the only corporate defendant[2] now moves

---

[2] Bishop and Basnight stipulated to Basnight's dismissal from this case. [*See* ECF Nos. 40; 42.]

for judgment on the pleadings. [ECF No. 57.] This time Abbott argues that dismissal is proper because it was never Bishop's employer and it cannot be held liable for the acts of Bishop's employer. [*See, e.g.*, ECF No. 59 at 10–20; ECF No. 71 at 9 n.9.]

Bishop opposes Abbott's motion and also seeks to amend his complaint to add LLC and SC as defendants. [*See* ECF Nos. 61, 70.]

## ANALYSIS

I.  **Abbott's motion for judgment on the pleadings**

As a general proposition, a motion for judgment on the pleadings, like a motion to dismiss, may be rendered moot by a later filing of a motion to amend. *See Onyiah v. St. Cloud State Univ.*, 655 F. Supp. 2d 948, 958 (D. Minn. 2009) (citing *Pure Country, Inc. v. Sigma Chi Fraternity*, 312 F.3d 952, 956 (8th Cir. 2002)). This basic rule exists because "[i]t is well-established that an amended complaint supercedes an original complaint and renders the original complaint without legal effect." *In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000).

But even in circumstances where a plaintiff amends as of right while a defendant's motion to dismiss is pending, "a defendant need not file a new Rule 12 motion merely because the plaintiff amended his pleading while the defendant's motion was pending." *DeVary v. Countrywide Home Loans, Inc.*, 701 F. Supp. 2d 1096, 1100 (D. Minn. 2010). "If some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading" because

"[t]o hold otherwise would exalt form over substance." 6 Charles Alan Wright, et al., *Federal Practice and Procedure* § 1476 (3d ed. 2019); *see also Cartier v. Wells Fargo Bank, N.A.*, 547 F. App'x 800, 803–04 (8th Cir. 2013) (noting that it is within a district court's discretion to treat a motion to dismiss the original complaint as a motion to dismiss the amended complaint).

In the Court's view, the circumstances here make ruling on Abbott's Motion appropriate. The proposed amendments do not seek to remedy the issue on which Abbott seeks a ruling. Abbott is seeking to exit the lawsuit, and the proposed amendments do not address Abbott's liability any differently than the First Amended Complaint. Instead, the proposed amendments merely seek to add two parties. Thus, the parties agree—and so does the Court—that a ruling on Abbott's motion is appropriate, and if granted, Abbott would cease to be a named party in any new complaint filed.

With that issue resolved, the Court turns to Abbott's motion. Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate only where, accepting as true all factual allegations set forth in [the plaintiff's] complaint[] and granting [him] all reasonable inferences, 'no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law.'" *In re Levaquin Prods. Liab. Litig.*, 752 F. Supp. 2d

1071, 1076 (D. Minn. 2010) (quoting *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 803 (8th Cir. 2002)).

Rule 12(c) motions for judgment on the pleadings are generally reviewed under the same standard as a motions under Rule 12(b)(6). *In re Pre-Filled Propane Tank Antitrust Litig.*, 893 F.3d 1047, 1056 (8th Cir. 2018). That is, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Jewell v. Wick*, No. 13-CV-2069 (DSD/SER), 2014 WL 3573639, at *1 (D. Minn. July 21, 2014) (quoting *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009)). When ruling on a motion for judgment on the pleadings, courts "may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010).

Almost all of Bishop's claims against Abbott sound in FEHA.[3] To succeed on such a claim, a plaintiff must first establish that the defendant is his employer or liable for the acts of his employer. *See, e.g.*, *Laird v. Capital Cities/ABC, Inc.*, 80 Cal. Rptr. 2d 454, 463–64 (Cal. Ct. App. 1998) (upholding judgment as a matter of law for defendant where plaintiff could not establish defendant was her employer or liable for the acts of her employer). Bishop also asserts a common law claim for wrongful termination in violation of public

---

[3] Even Bishop's Seventh Cause of Action, which requests declaratory relief, seeks in essence a declaration that Abbott has violated FEHA. (*See* FAC ¶¶ 77–85.)

8

policy. This, too, can be asserted only against an employer, *see Weinbaum v. Goldfarb, Whitman & Cohen*, 54 Cal. Rptr. 2d 462, 464–65 (Cal. Ct. App. 1996), or a defendant that may be held liable for the acts of the employer, *see, e.g.*, *Martinucci v. S. Cal. Permanente Med. Grp.*, No. B215453, 2011 WL 1020043, at *17 (Cal. Ct. App. Mar. 23, 2011). Bishop's employer was SC. (*See* FAC ¶ 8.) Abbott contends that it is entitled to judgment as a matter of law because Bishop cannot hold Abbott liable for the acts of SC. The Court agrees that dismissal of the claims against Abbott is proper.

### A. The integrated enterprise theory does not apply

In particular, Abbott argues that Bishop cannot establish that it acted as a single enterprise with SC, Bishop's employer. Under California law, "[c]orporate entities are presumed to have separate existences, and the corporate form will be disregarded only when the ends of justice require this result." *Laird*, 80 Cal. Rptr. 2d at 460. Indeed, "there is a strong presumption that a parent company is not the employer of its subsidiary's employees." *Id.* But two corporations may be considered a single employer where the "integrated enterprise" test is satisfied. *Id.* The "integrated enterprise" test has four factors: "interrelation of operations, common management, centralized control of labor relations, and common ownership or financial control." *Id.* These four factors are often considered together, but centralized control of labor relations is often found to be the most important. *Id.* at 461.

Abbott's subsidiaries acquired SC's corporate parent months after Bishop's

employment ended. There is no indication of any interrelation of operations, common management, or centralized control of labor relations. Nor is it reasonable to infer that Abbott exercised any financial control over SC months before it entered the merger agreement with SC's corporate parent. California courts often hold that an ordinary parent-subsidiary relationship cannot satisfy the "integrated enterprise" test. *See, e.g.*, *Crystal Towers, Ltd. v. Highlands Ins. Grp., Inc.*, No. B149251, 2002 WL 31412626, at *9 (Cal. Ct. App. Oct. 28, 2002); *see also Laird*, 80 Cal. Rptr. 2d at 461. It follows that the ordinary relationship between a corporation and the subsidiary of its merger target cannot satisfy the "integrated enterprise" test either. Because Bishop cannot establish that Abbott acted as single enterprise with his employer when his employment ended with SC, the claims asserted under this theory against Abbott are dismissed with prejudice.

**B.      The First Amended Complaint does not plead successor liability**

Abbott also argues that Bishop's successor liability theory fails. Under governing California law, "[t]he general rule of successor nonliability provides that where a corporation purchases, or otherwise acquires by transfer, the assets of another corporation, the acquiring corporation does not assume the selling corporation's debts and liabilities." *Fisher v. Allis-Chalmers Corp.*, 116 Cal. Rptr. 2d 310, 315 (Cal. Ct. App. 2002). There are four exceptions to this rule:

> When '(1) there is an express or implied agreement of assumption, (2) the transaction amounts to a consolidation or merger of the two corporations, (3) the purchasing corporation is a mere continuation of the seller, or (4) the

> transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts.'

*Daniell v. Riverside Partners I, L.P.*, 142 Cal. Rptr. 3d 717, 722–23 (Cal. Ct. App. 2012) (quoting *Ray v. Alad Corp.*, 560 P.2d 3, 7 (Cal. 1977)).

None of these exceptions applies. First, the First Amended Complaint does not adequately plead that Abbott assumed the liabilities of SC.

> To allege successor-in-interest liability on the basis that the successor expressly or impliedly agrees to assume the liabilities of its predecessors, a plaintiff 'must not only plead the existence of an assumption of liability but either the terms of that assumption of liability (if express) or the factual circumstances giving rise to an assumption of liability (if implied).'

*Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1037 (C.D. Cal. 2015) (quoting *No Cost Conference, Inc. v. Windstream Commc'ns, Inc.*, 940 F. Supp. 2d 1285, 1300 (S.D. Cal. 2013)). The First Amended Complaint merely alleges that "Abbott and [SJMI] and its subsidiaries, including [SC] entered into a Merger Agreement whereby [Abbott] acquired the assets and liabilities, among other things, of St. Jude Medical." (FAC ¶ 7.) Such threadbare allegations constitute legal conclusions and lack sufficient facts to plead the first exception to California's general rule of successor nonliability. *See, e.g.*, *Gerritsen*, 112 F. Supp. 3d at 1038 (concluding plaintiffs' "allegation that . . . obligations were assigned to [defendant] 'by virtue of the transaction' is the very legal conclusion that numerous courts have found insufficient under Rule 8"); *No Cost Conference*, 940 F. Supp. 2d at 1299 (holding pleading that "as a result of the merger, the [defendants] assumed all right and responsibilities with regard to the [disputed contract]" was insufficient). The First

Amended Complaint similarly "fail[s] to support the legal conclusion" that Abbott expressly or impliedly assumed SC's assets or liabilities "with any factual context," and therefore does not adequately plead the first exception to successor nonliability under California law. *Brockway v. JP Morgan Chase Bank*, No. 11-CV-2982 (JM/BGS), 2012 WL 4894253, at *3 (S.D. Cal. Oct. 15, 2012).

Second, there is no indication that Abbott's acquisition of SJMI resulted in Abbott's de facto consolidation or merger with SC. Under the second exception, liability attaches "where one corporation takes all of another's assets without providing any consideration that could be made available to meet claims of the other creditors." *Gerritsen*, 112 F. Supp. 3d at 1039 (emphasis omitted) (quoting *Franklin v. USX Corp.*, 105 Cal. Rptr. 2d 11, 18 (Cal. Ct. App. 2001)). This has been called the de facto merger exception. *See id.* Courts have analyzed the following four factors to determine whether an asset purchase constitutes a de facto merger:

> (1) There is a continuation of the enterprise of the seller corporation, so that there is continuity of management, personnel, physical location, assets, and general business operations.
>
> (2) There is a continuity of shareholders which results from the purchasing corporation paying for the acquired assets with shares of its own stock, this stock ultimately coming to be held by the shareholders of the seller corporation so that they become a constituent part of the purchasing corporation.
>
> (3) The seller corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible.

(4) The purchasing corporation assumes those obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the seller corporation.

*United States v. Sterling Centrecorp Inc.*, 960 F. Supp. 2d 1025, 1042 (E.D. Cal. 2013).

The First Amended Complaint pleads that "[t]he entity that came out of [Abbott's merger with SJMI] was renamed St. Jude Medical, LLC," SC is now a wholly owned subsidiary of LLC, and Abbott is LLC's sole member. (FAC ¶ 7). The First Amended Complaint therefore pleads that SC continues to exist and that its corporate parent is LLC. (*See* FAC ¶ 7.)

The First Amended Complaint does not allege a transaction that qualifies for California's de facto merger exception. The Eighth Circuit recently applied a substantially similar four-factor test to determine whether a plaintiff could pierce the corporate veil between the acquiring corporation (Abbott's analogue) and the new subsidiary that resulted from merging another subsidiary into its target corporation (LLC's analogue). *See Kirk v. Schaeffler Grp. USA, Inc.*, 887 F.3d 376, 387–89 (8th Cir. 2018) (applying Missouri law). The court concluded that the de facto merger exception would not apply in those circumstances. *Id.* There, as here, both the acquiring corporation and the new subsidiary formed in the merger process continued to exist. *See id.* Thus, "even if [the acquiring corporation] acquired all or substantially all the assets of [the target corporation] by 'converting' it to the [new] subsidiary, this does not establish . . . that a 'de facto merger' warranting successor liability occurred." *Id.*

California courts also appear disinclined to pierce the corporate veil between an acquiring corporation and a new subsidiary in similar circumstances "where [that] form of reorganization was not chosen to disadvantage creditors or shareholders." *N. Valley Mall, LLC v. Longs Drug Stores Cal., LLC*, 238 Cal. Rptr. 3d 368, 369 (Cal. Ct. App. 2018). The First Amended Complaint contains no indication that the structure of Abbott's merger with SJMI was chosen for either of these purposes. The Court is persuaded that the merger transaction as described in the First Amended Complaint does not constitute a de facto merger warranting a piercing of the corporate veil. It therefore follows that the First Amended Complaint does not plead a de facto merger between Abbott and SC. *See Daniels v. Select Portfolio Servicing, Inc.*, 201 Cal. Rptr. 3d 390, 409 (Cal. Ct. App. 2016) (holding complaint failed to adequately plead successor liability at California's demurrer stage where it did not allege that the defendant "purchased or otherwise acquired [the corporation's] principal assets"); *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1066 (N.D. Cal. 2014) (holding complaint failed to adequately allege successor liability under California law because it did not allege a transfer of assets).

Third, the First Amended Complaint does not plead that Abbott is a mere continuation of SC. California courts have described the "mere continuation" exception as "merely a subset" of the de facto merger exception. *Franklin*, 105 Cal. Rptr. 2d at 17; *see also Gerritsen*, 112 F. Supp. 3d at 1040. The mere continuation exception, like the de facto merger exception, will not apply "where the corporation selling assets still exists and

14

remains answerable for the continuing liabilities." *KNT, Inc. v. United States*, No. 18-CV-00882-SK, 2019 WL 1473458, at *10 (N.D. Cal. Feb. 15, 2019). That is, "a purchasing corporation is not a mere continuation of the seller where . . . the seller remains a separate entity capable of satisfying judgments against it, and there is no indication that the sale worked the type of inequity that successor liability principles are designed to avoid." *Garcia v. New Albertson's, Inc.*, No. 2:13-CV-05941-CAS, 2014 WL 4978434, at *11 (C.D. Cal. Oct. 3, 2014) (collecting cases). In the first place, it does not appear to this Court that the First Amended Complaint contains any factual allegations that create a plausible inference that SC transferred its principal assets to Abbott, and therefore cannot establish "any exception to the ordinary rule of successor nonliability." *Daniels*, 201 Cal. Rptr. 3d at 409; *see also Opperman*, 87 F. Supp. 3d at 1066. But even if it did, the First Amended Complaint contains no allegation that any such transfer rendered SC incapable of satisfying any judgments against it. So the First Amended Complaint does not plead that Abbott is a mere continuation of SC. *See Gerritsen*, 112 F. Supp. 3d at 1040.

Finally, the First Amended Complaint does not plead an asset transfer from SC to Abbott for the fraudulent purpose of escaping liability for SC's debts. The First Amended Complaint contains no factual allegations that create a plausible inference that any asset transfer occurred for any improper purpose. The First Amended Complaint therefore cannot establish that the fourth exception to successor nonliability applies. *See Gerritsen*, 112 F. Supp. 3d at 1041.

15

In sum, because the First Amended Complaint lacks sufficient factual matter to establish that any of the four exceptions to general successor nonliability apply, the claims asserted against Abbott under a theory of successor liability are dismissed without prejudice.

## II. Bishop's motion for leave to amend his complaint

Rule 15(a) of the Federal Rules of Civil Procedure provides that, if a party is outside the time for amending as of right, it "may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). It further states that "[t]he court should freely give leave when justice so requires." *Id.* "A court may properly deny leave to amend only in limited circumstances such as when the amendment will cause or is the result of 'undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies in previous amendments, undue prejudice to the non-moving party, or futility.'" *ecoNugenics, Inc. v. Bioenergy Life Sci. Inc.*, 355 F. Supp. 3d 785, 790 (D. Minn. 2019) (quoting *Baptist Health v. Smith*, 477 F.3d 540, 544 (8th Cir. 2007)). A claim is futile if it would not survive a Rule 12(b)(6) motion to dismiss for failure to state a claim. *See Doe v. Dardanelle Sch. Dist.*, 928 F.3d 722, 727 (8th Cir. 2019).

Bishop seeks to amend the First Amended Complaint to add LLC and SC as defendants. [*See generally* ECF No. 64-1, Ex. D ("Proposed Second Amended Complaint" or "PSAC").] He also seeks to add certain factual allegations that describe a more recent right-to-sue notice issued by DFEH and incorporate it by reference. (*See id.* ¶ 39.) Abbott

opposes Bishop's motion, arguing that amending the complaint to add LLC and SC as defendants would be futile. For the reasons stated below, the Court determines that while Bishop's proposed amendments about LLC would not survive a Rule 12(b)(6) motion, leave should be granted to allow Bishop to add SC as a defendant.

**A.** *Amending the First Amended Complaint to assert claims against LLC would be futile.*

Bishop seeks to assert all causes of action currently alleged in the First Amended Complaint against LLC as well. [*See generally* PSAC.] Abbott argues that Bishop's proposed amendments about LLC would be futile because LLC did not exist at the time Bishop's employment ended with SC and Bishop's proposed amendments cannot establish that LLC should be held liable for the acts of SC. The Court agrees.

As noted above, Bishop cannot succeed on any of his claims against LLC without establishing that LLC is his employer or liable for the acts of his employer. There is no dispute that LLC did not exist until months after Bishop's employment ended with SC. (*See* FAC ¶ 7.) Just as the First Amended Complaint cannot establish that Abbott acted as a single enterprise with SC months before Abbott acquired SJMI, the Proposed Second Amended Complaint cannot establish that LLC acted as a single enterprise with SC months before LLC existed.

The Proposed Second Amended Complaint also lacks factual allegations that lead to a plausible inference that any of the circumstances under which LLC may be held liable as SC's successor-in-interest exist. It contains no factual allegations that plausibly plead

17

that LLC expressly or impliedly assumed SC's assets or liabilities. And it lacks any factual allegations signifying that SC transferred any assets to LLC or that SC lacks assets to answer its liabilities due to such a transfer. Finally, it contains no indication that any asset transfer occurred between SC and LLC for any improper purpose. The Proposed Second Amended Complaint fails to plead that LLC may be considered the successor-in-interest of SC, which it alleges still exists as LLC's subsidiary. (*See* PSAC ¶¶ 7–8.)

The Court thus concludes that adding LLC as a defendant when the Proposed Second Amended Complaint lacks factual allegations that would support any theory by which LLC may be held liable for the acts of SC would be futile. Because the claims as pleaded against LLC in the Proposed Second Amended Complaint would not survive a Rule 12(b)(6) motion to dismiss, the Court will not grant Bishop leave to add LLC as a defendant.

B.  *Amending the First Amended Complaint to add claims against SC is proper*

As noted throughout this Order, SC was Bishop's employer and SC continues to exist. Bishop seeks to amend the First Amended Complaint to assert all causes of action currently alleged against Abbott in the First Amended Complaint against SC as well. But Abbott contends that almost all of Bishop's proposed claims against SC are futile because: (1) Bishop failed to exhaust his administrative remedies before filing claims sounding in FEHA; (2) the PSAC's common law wrongful termination claim is time-barred; and (3) Bishop cannot state a claim for declaratory relief because he will not suffer any future

18

harm and, in any event, such a claim would be duplicative of his other claims. Abbott does not contend that amending the First Amended Complaint to name SC as a defendant in its sixth cause of action would be futile.

Abbott raised its futility arguments in its opposition to Bishop's motion for leave to amend in its memorandum of law. [ECF No. 71.] Bishop's only opportunity to respond to that argument was its memorandum of law filed in opposition to Abbott's motion for judgment on the pleadings due and filed on that same day. [*See* ECF Nos. 69, 70.] The Court determines that disallowing Bishop's proposed amendments adding SC as a defendant without robust briefing of the futility issues raised in Abbott's June 26, 2017 memorandum of law would not be in the interests of justice, as required by Rule 15.

The Court therefore allows the amendments as stated above without prejudice to SC's right to bring a dispositive motion under Rule 12 or Rule 56 of the Federal Rules of Civil Procedure once the Proposed Second Amended Complaint is served.

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Abbott's Motion for Judgment on the Pleadings [ECF No. 57] is GRANTED; and

2. Bishop's Motion for Leave to File Second Amended Complaint [ECF No. 61] is GRANTED in part and DENIED in part. Based on the ruling on the Motion for Judgment on the Pleadings, Abbott shall not be included as a defendant in the Proposed Second Amended Complaint.

Dated: December 20, 2019

BY THE COURT:

s/Nancy E. Brasel
Nancy E. Brasel
United States District Judge