## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

DAVID BISHOP,                                      Case No. 19-CV-420 (NEB/ECW)

              Plaintiff,

v.                                                ORDER ON MOTION TO DISMISS THE
                                                  THIRD AMENDED COMPLAINT

ST. JUDE MEDICAL S.C., INC.,

              Defendant.

---

David Bishop, in his Third Amended Complaint (ECF No. 79 ("TAC")), names St. Jude Medical S.C., Inc. ("SC") as the sole defendant in this case. The TAC alleges violations of the California Fair Employment and Housing Act, Cal. Gov't Code §§ 12900, *et seq.* ("FEHA") and common law wrongful termination in violation of public policy. SC moves to dismiss the claims asserted against it in the TAC and to strike paragraph 41 of the TAC. (ECF No. 84.) For the reasons stated below, this Court grants in part and denies in part SC's motion.

### BACKGROUND

The Court draws the following background from the TAC, accepting its factual allegations as true and drawing all reasonable inferences in Bishop's favor. *See Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014). In so doing, the Court

disregards any conclusory allegations or legal conclusions. *See Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019).

## I.    Bishop's employment with SC ends

Bishop began his employment with SC in July 1999. (TAC ¶ 13.) In 2012, he transferred to the Global Education Department in Austin, Texas. (TAC ¶ 15.) Although the department is in Austin, Bishop continued to work at SC's location in Sylmar, California, traveling to Austin on occasion for teaching purposes. (TAC ¶ 15.) Michael Basnight became his supervisor in early 2014. (TAC ¶ 16.)[1]

Bishop received a diagnosis of transverse myelitis in 2015. (TAC ¶ 17.) Among other things, this disorder causes significant pain. (TAC ¶ 17.) Bishop explained his condition to Basnight and another supervisor and told Basnight that he could not travel extensively within a 36-hour period. (TAC ¶¶ 18–19.)

Travel, however, was required for the job; Bishop and Basnight traveled to Austin, Texas for a conference in August 2016. (TAC ¶ 20.) Bishop experienced significant pain and discomfort throughout the conference. (TAC ¶ 21.)

While at the conference, Bishop and Basnight had a confrontation. (TAC ¶¶ 22–27.) It began around the middle of the day, when Bishop went to the company cafeteria to get a glass of water and Basnight approached him to discuss some scheduling issues.

---

[1] Once a defendant in this case, Basnight has been dismissed and is now a non-party. (*See* ECF Nos. 40, 42.)

(TAC ¶¶ 22–23.) Bishop told Basnight that he was in considerable pain and wanted to be left alone. (TAC ¶ 24.) But Basnight became confrontational and mean, ignoring Bishop's request that they speak later. (TAC ¶ 24.)  Bishop told Basnight that he needed to return to his hotel room and lie down. (TAC ¶¶ 24–25.) Bishop returned to his classroom and told his instructor that he was returning to his hotel room. (TAC ¶ 25.) Then, while Bishop attempted to arrange for a ride to his hotel, Basnight continued to badger him. (TAC ¶¶ 25–26.)

Bishop's argument with Basnight culminated in Bishop asking Basnight if he would leave him alone if Bishop quit. (TAC ¶ 26.) Basnight told Bishop that he would not accept Bishop's resignation. (TAC ¶ 26.) Because Basnight continued to pester him, Bishop again asked Basnight if Basnight would leave him alone if he quit. (TAC ¶ 27.) Again, Basnight told Bishop that he would not accept Bishop's resignation. (TAC ¶ 27.)

Bishop returned to his hotel room and fell asleep. (TAC ¶ 28.) He woke to a call from Meghan Nelson, Senior HR Generalist, who called to say that Basnight had notified his supervisor that Bishop wanted to quit and that they had decided to accept Bishop's resignation. (TAC ¶ 28.)

The next day, August 23, Bishop met with Nelson while his supervisor was on the phone. (TAC ¶ 29.) His supervisor explained that Basnight had called her to say Bishop had resigned and asked if that was indeed Bishop's intent. (TAC ¶ 29.) Bishop explained that, since Basnight did not accept his resignation, he did not consider their interaction a

concern and that he believed that he and Basnight could find a way to work together. (TAC ¶¶ 29–31.) He further explained that although he did not intend to resign, he may have indicated as much due to medication clouding his judgment. (TAC ¶ 29.) Nelson inquired about Bishop's pain and medication. (TAC ¶ 30.) Bishop explained that his pain was severe and that he was experiencing psychological and cognitive issues due to his medication. (TAC ¶ 30.) Bishop repeated that it was not his intent to resign and that he wished to stay employed by SC. (TAC ¶ 31.) He was informed that, because he had resigned, whether he could continue to work for SC would be the company's decision. (TAC ¶ 31.)

On August 25, after he had returned to California, Bishop received a call from Nelson letting him know that the company had decided to accept his resignation. (TAC ¶ 32.) Bishop repeated that he had not intended to resign and that he wished to stay employed by SC. (TAC ¶ 32.) On August 26, Nelson sent Bishop an e-mail attaching a letter confirming his resignation "as . . . communicated to [SC] on Monday, August 22, 2016, and [SC's] acceptance thereof." (TAC ¶ 33.) Bishop did not sign the letter. (TAC ¶ 33.) On August 29, Bishop sent Nelson an e-mail telling her that he did not want to end his employment, that there was no voluntary resignation on the table, and that he had repeatedly attempted to resolve the issue over the week. (TAC ¶ 34.) On August 31, 2016, Bishop received a letter stating that his last day of work would be August 31. (TAC ¶ 35.)

## II.    Bishop decides to sue Abbott

In January 2017, Abbott Laboratories ("Abbott") acquired St. Jude Medical, Inc. ("SJMI") and its subsidiaries, including SC. (TAC ¶ 8.) In investigating his claims against SC, Bishop determined that Abbott, SJMI, SC, and St. Jude Medical, LLC—the entity that became SC's new parent company after the merger—shared officers and business locations. (TAC ¶ 9.) He did not understand the relationship between these various entities. (TAC ¶ 9.) Bishop believed that Abbott became his former employer as a result of the merger. (TAC ¶ 10.)

Due to this belief, when Bishop filed a complaint with California's Department of Fair Employment and Housing ("DFEH"), he filed against Abbott and Basnight. (TAC ¶ 38.) In the complaint, Bishop claimed that he has a disability, that his employer did not discuss accommodations with him, did not provide him with accommodations, and terminated him claiming that he had resigned. (ECF No. 79-1, Ex. A.) He amended his DFEH complaint in May 2019 to add SC, as well as its parent company, as respondents. (TAC ¶ 40.)

On August 15, 2018, Bishop sued Abbott Laboratories, Inc. and Basnight for alleged violations of FEHA in California state court. (*See* ECF No. 1-2.) Abbott Laboratories, Inc. removed the case to federal court, asserting the existence of diversity jurisdiction under 28 U.S.C. § 1332. (*See* ECF No. 1.) Bishop filed an amended complaint

substituting Abbott for Abbott Laboratories, Inc. as the sole corporate defendant. (*See* ECF No. 15.)

Abbott then moved to dismiss under *forum non conveniens* and, in the alternative, sought to transfer venue to this District. (*See* ECF No. 17-1 at 1.) In support of its motion, Abbott pointed to a forum-selection clause in the employment agreement Bishop had entered with SC, claiming that it could enforce the employment agreement as SC's affiliate. (*Id.* at 2–3.) The District Court for the Central District of California agreed that Abbott could enforce the agreement as an affiliate of SC and transferred venue to this Court. (*See* ECF No. 27 at 7–9.)

On December 20, 2019, the Court granted Abbott's motion for judgment on the pleadings as well as Bishop's motion requesting leave to file a complaint naming SC as a defendant. (ECF No. 77.) On January 21, 2020, Bishop filed the TAC against SC. (ECF No. 79.) SC now seeks to dismiss the claims asserted against it in the TAC and to strike paragraph 41 of the TAC. (ECF No. 84.)

## ANALYSIS

### I.   SC's Motion to Dismiss

SC seeks dismissal of the TAC under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. (*See* ECF No. 84). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual allegations to 'state a claim to relief that is plausible on its face.'" *Smithrud v. City of St. Paul*, 746 F.3d 391, 397 (8th Cir. 2014) (quoting

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). In assessing the sufficiency of the complaint, courts accept as true all factual allegations and draw all reasonable inferences in favor of the non-moving party. *See Glick*, 944 F.3d at 717. Although courts may not consider materials outside the pleadings, they may consider materials that "are necessarily embraced by the pleadings." *Noble Sys. Corp. v. Alorica Central, LLC*, 543 F.3d 978, 982 (8th Cir. 2008) (citation omitted). "All federal courts are in agreement that the burden is on the moving party to prove that no legally cognizable claim for relief exists." 5B Wright & Miller, Federal Practice & Procedure § 1357 (3d ed. 2004); *see also Mediacom Se. LLC v. BellSouth Telecomms., Inc.*, 672 F.3d 396, 399 (6th Cir. 2012) (reversing district court that improperly placed burden on plaintiff rather than moving party).

SC raises various arguments for dismissal of the counts alleged in the TAC. First, SC contends that all of the FEHA-based claims alleged in the TAC should be dismissed because Bishop failed to exhaust his administrative remedies before pursuing his FEHA claims in court. Second, SC argues that the common law wrongful termination claim asserted in the fifth cause of action of the TAC is untimely. Third, SC contends that the seventh cause of action in the TAC, which seeks declaratory relief, is wholly duplicative of the other counts and thus should be dismissed. The Court will address each of these arguments separately.

A.      *Exhaustion of FEHA Claims*

California law provides that an employee must first exhaust his administrative remedies by filing a complaint with DFEH and obtaining a right-to-sue letter from DFEH before he brings FEHA claims in court. *See Medix Ambulance Serv., Inc. v. Superior Court*, 118 Cal. Rptr. 2d 249 (Cal. Ct. App. 2002). California courts have described a failure to exhaust administrative remedies as a jurisdictional defect. *See, e.g.*, *Blum v. Superior Court*, 45 Cal. Rptr. 3d 902, 905 (Cal. Ct. App. 2006). As explained in *Martin v. Fisher*, "the function of an administrative complaint is to provide the basis for an investigation into an employee's claim of discrimination against an employer, and not to limit access to the courts." 13 Cal. Rptr. 2d 922, 924 (Cal. Ct. App. 1992). The right-to-sue notice from DFEH "is primarily notification that no further administrative action will be taken in the case." *Id.* At all times relevant here, Cal. Gov't Code Section 1960(d) required that the complaint be filed with DFEH within one year of the alleged FEHA violation. *See* Cal. Gov't Code § 12960 (prior to 2019 amendment).[2]

SC raises two arguments about exhaustion of administrative remedies under FEHA. First, it contends that Bishop's failure to name SC in the DFEH charge Bishop filed in August 2017 is fatal to all of his FEHA-based claims because Bishop has failed to exhaust his remedies against SC as FEHA requires. (*See* ECF No. 86 ("SC Mot. to Dismiss

---

[2] Section 12960 has since been amended to extend that time from one to three years. *See* Cal. Gov't Code § 12960.

Mem.") at 12–17.) This argument implicates the TAC's first, second, third, fourth, sixth, and seventh causes of action.[3] Second, SC argues that, even if the Court were to excuse Bishop's failure to name SC in the August 29, 2017 DFEH charge, the TAC's first through fourth causes of actions are subject to dismissal because all alleged conduct relating to those claims occurred more than one year prior to the filing of the DFEH charge. (*See* SC Mot. to Dismiss Mem. at 17–18.)[4].

1.   *The effect of the failure to name SC in the 2017 DFEH charge on Bishop's first, second, third, fourth, sixth, and seventh causes of action*

SC argues that Bishop's failure to name SC in his 2017 DFEH charge means that his FEHA-based claims should be dismissed for failure to exhaust his administrative remedies. Under FEHA, a plaintiff generally does not exhaust his administrative remedies against a defendant unless he specifically names that defendant in a timely-filed DFEH charge. *See, e.g., Myers v. Checksmart Fin., LLC,* 701 F. App'x 588, 590 (9th Cir. 2017); *Ayala v. Frito Lay, Inc.,* 263 F. Supp. 3d 891, 903 (E.D. Cal. 2017). Exhaustion is not satisfied where the DFEH charge provides insufficient notice of the substance of the plaintiff's claims. *See id.* (collecting cases). But courts may excuse a failure to name a

---

[3] That is, all claims other than his common law claim for wrongful termination in violation of public policy.

[4] Specifically, SC claims that these causes of action are "time-barred." SC Mot. to Dismiss Mem. at 17. But it appears California courts will hold that a civil action is barred for lack of administrative exhaustion when the plaintiff cannot establish that he filed a complaint with DFEH within a year of the alleged wrongful conduct. *See Wyatt v. City of L.A.,* No. B288483, 2019 WL 4014082, at *5 (Cal. Ct. App. Aug. 26, 2019) (collecting cases). The Court thus construes this argument as addressing administrative exhaustion.

defendant in the DFEH charge where the defendant is the plaintiff's former employer, the defendant is otherwise identifiable from the DFEH charge, and plaintiff's failure to correctly name his employer is the result of a mistake. *See, e.g., Myers*, 701 F. App'x at 590 (holding lower court erred in granting summary judgment for employer because, although plaintiff failed to properly identify her employer, she identified its address, its human resources representative, and an associated fictitious business name).

For example, in *Martinez v. Louis Lau, Inc.*, No. G026937, 2002 WL 31772018 (Cal. Ct. App. Dec. 11, 2002), the plaintiff filed a charge with DFEH erroneously naming "Pacific Market" as her former employer. *Id.* at *1. After obtaining a right-to-sue notice, she filed suit, ultimately identifying both the market's original corporate owner and its new corporate owner. *Id.* The California Court of Appeals reversed the trial court's determination that she had failed to exhaust her administrative remedies. It concluded that although the plaintiff incorrectly identified her former employer as "Pacific Market" in the DFEH charge, she had provided sufficient information in the charge to satisfy FEHA because "Pacific Market" was the fictitious name of the corporation that had employed her and she had correctly identified as "Owner/partner" the individual who actually owned that corporation. *Id.* at *4–5. The court reasoned that "[i]t should be self-evident that to the extent [plaintiff] stated a [FEHA] claim, she intended to charge as the wrongdoer the employer who had terminated her, whose dba she had identified and whose owner she had identified." *Id.* at *4.

Similarly, in *Thompson v. George DeLallo Co.*, No. CIV. S-12-1058 LKK, 2013 WL 211204 (E.D. Cal. Jan. 16, 2013), the plaintiff filed a charge with DFEH incorrectly naming "Ehmann Olive Co." as his former employer. *Id.* at *1. He later learned that Ehmann Olive Co. was a fictitious business name for DeLallo Italian Foods, Inc. ("DeLallo"). *Id.* at *2. The plaintiff sought to amend his complaint in court to substitute DeLallo as the defendant. *Id.* at *1. DeLallo argued amendment would be futile because the plaintiff failed to exhaust his administrative remedies against it. *Id.* at *7. It claimed that various documents, including the plaintiff's IRS Form W-2s, his layoff notice, and his final paycheck, all plainly displayed "DeLallo Italian Foods, Inc. dba Ehmann Olive Company." *Id.* at *3. The court nonetheless concluded that FEHA's exhaustion requirements were satisfied because the DFEH charge identified the fictitious business name of the plaintiff's former employer and was mailed to the facility at which he was employed. *Id.* at *9. This was sufficient to put DeLallo on notice of the substance of the plaintiff's allegations. *Id.*

More recently, the Ninth Circuit in *Myers v. Checksmart Financial, LLC*, 701 F. App'x 588 (9th Cir. 2017) reversed a lower court's determination that the plaintiff failed to exhaust her administrative remedies against her former employer where the plaintiff mistakenly filed the charge against "California Check Cashing Stores." *Id.* at 589. It reasoned that although the plaintiff had failed to correctly identify Checksmart Financial, LLC as her former employer in the caption or body of the DFEH charge, she had

identified its fictitious business name, its address, and its human resources representative. *Id.* at 590. It concluded the plaintiff had sufficiently identified her former employer for the purposes of exhaustion under FEHA. *Id.*

This Court concludes that, like the charges in *Martinez, Thompson,* and *Myers,* Bishop's August 2017 DFEH charge sufficiently identified SC as his former employer even though he failed to specifically name SC in the caption or body. The August 2017 DFEH charge names Abbott as the private employer that committed certain alleged FEHA violations against Bishop. (*See* ECF No. 79-1.) But it also names Michael Basnight as a co-respondent. (*See id.*) It provides the same address in Sylmar, California for both Abbott and Basnight. And in "Additional Complaint Details," the DFEH charge provides:

> I have a disability and my employer did not discuss how I could be accommodated, did not provide me with accommodation(s) and terminated me alleging I had resigned. My supervisor harassed and badgered me when he would not leave me alone after I told him I was in severe pain because of my disability.

(*Id.*). It is undisputed that Basnight was Bishop's supervisor at SC when his employment ended. It is plain on the face of the DFEH charge that Bishop intended to charge as the wrongdoer the employer who had terminated him, whose representative (Basnight) he had specifically identified.

Additionally, the TAC pleads that Abbott and SC share business locations and that Bishop did not understand the relationship between these various entities. (TAC ¶ 9.) It further alleges that, although Bishop understood that SC was his former employer until

Abbott acquired SJMI, he believed Abbott became his former employer as a result of that acquisition. (TAC ¶ 10.) As in *Martinez*, *Thompson*, and *Myers*, although Bishop did not specifically name SC in the DFEH charge, SC is otherwise identifiable and Bishop's failure to correctly name his employer was the result of a mistake. Thus, Bishop's failure to specifically name SC in his 2017 DFEH charge is not fatal to his FEHA-based claims.

The Court is not persuaded that the authority cited by SC mandates a different result. Many of the cases SC cites confirm that a failure to specifically identify *individual* alleged wrongdoers in the DFEH charge—not the corporation that is the plaintiff's former employer—constitutes an inexcusable failure to exhaust administrative remedies against such individuals. *See, e.g.*, *Ortiz v. Sodexho, Inc.*, No. 10-CV-2224 JLS (RBB), 2011 WL 3204842, (S.D. Cal. July 26, 2011); *Medix Ambulance Serv., Inc. v. Super. Ct.*, 97 Cal. App. 4th 109 (Cal. Ct. App. 2002); *Cole v. Antelope Valley Union High Sch. Dist.*, 47 Cal. App. 4th 1505 (Cal. Ct. App. 1996). And in the cases SC cites where the plaintiff's FEHA claims were dismissed for failure to name a *corporate* entity in the DFEH charge, the entity dismissed was not the plaintiff's former employer. *See, e.g.*, *Rhodes v. Sutter Health*, No. 2:12-0013 WBS DAD, 2012 WL 662462, at *5–6 (E.D. Cal. Feb. 28, 2012) (dismissing FEHA claims asserted against affiliates of entity plaintiff claimed was her employer); *Polk v. OSI Elecs., Inc.*, No. CV-14-292-MWF (ASX), 2014 WL 12787639, *2, *4 (C.D. Cal Feb. 24, 2014) (dismissing FEHA claim asserted against entity plaintiff conceded was not his direct employer); *Reyes v. Healthcare Servs. Grps., Inc.*, No. 215CV07177CASKLS, 2015 WL

6551870, *4–6 (C.D. Cal. Oct. 26, 2015) (dismissing FEHA claims asserted against alleged individual wrongdoer's employer after noting that defendant had never employed the plaintiff). Such a distinction between claims asserted against entities that once employed plaintiffs and those that did not appears consistent with California courts' observation that the FEHA administrative exhaustion requirement exists in part to give defendants notice of the substance of plaintiffs' FEHA claims.

Of the cases cited by SC, *Rivers v. Columbia Sussex Corp.*, No. 12-1087 WBS AC, 2013 WL 3283491 (E.D. Cal. June 27, 2013) considered the most factually similar circumstances. In *Rivers*, the plaintiff brought suit against his employer's parent company, Columbia Sussex Corporation ("Columbia Sussex"). *Id.* at *1. He later amended his pleadings to add certain corporate entities (the "Westmont defendants") that purchased his employer from Columbia Sussex weeks before he was terminated. *Id.* at *2. He filed a complaint with DFEH against Columbia Sussex. *Id.* In that DFEH charge, he made no mention of the Westmont defendants. *Id.* at *4. After filing suit in court, the plaintiff settled with Columbia Sussex. *Id.* at *2. The court concluded that dismissal of the Westmont defendants was also proper, because "this [was] not a case where the plaintiff encountered difficulty determining the correct party to name in the administrative complaint, such as when a plaintiff names the fictitious business name of his employer but not the true employer" but rather a case where the plaintiff was "on notice of all the necessary facts relating to the Westmont defendants' involvement in the allegedly

14

wrongful acts, but he failed to include them in" the DFEH charge. *Id.* at *5. In so doing, it emphasized that the plaintiff had never claimed that the Westmont defendants were his employers. *Id.* at *4. In comparison, Bishop mistakenly believed that Abbott became his former employer as a result of its acquisition of SC and, consistent with that belief, claimed that Abbott was his employer for purposes of FEHA in this litigation until the Court dismissed Abbott from this case. Accordingly, the Court is not persuaded by SC's contention that the reasoning of the court in *Rivers* requires dismissal here.

Thus, the Court finds that the August 2017 DFEH charge contained sufficient information to correctly identify SC as Bishop's former employer such that the claims asserted against SC need not be dismissed for failure to exhaust administrative remedies under FEHA. [5] Because failure to exhaust is the only ground SC argues for dismissal of Bishop's sixth cause of action for discrimination under FEHA, SC's motion to dismiss is denied as to Bishop's sixth cause of action.[6]

---

[5] SC also argues that Bishop failed to exhaust his remedies under FEHA because his August 2019 amendments to the DFEH charge, which, among other things, named SC as a respondent, were untimely. (*See* SC Mot. to Dismiss Mem. at 15–16.) Because the Court concludes that the August 2017 DFEH charge was sufficient to identify SC as Bishop's former employer, it need not address that argument.

[6] In its reply, SC argues for the first time in a cursory fashion that "none of [Bishop's] claims relate back to his original Complaint." (ECF No. 104 ("SC Reply Mem.") at 2.) In so doing, it cites a section of its opening brief that argues only that Bishop's claim for common law wrongful termination in violation of public policy is time-barred because he first named SC as a defendant in the TAC, which SC argues Bishop filed outside of the applicable limitations period, and the TAC does not relate back to his initial complaint. (SC Mot. to Dismiss Mem. at 21–23.) As to the causes of action asserted under FEHA, SC's opening brief merely argues that these must be dismissed because no administrative

**2.**     *The effect of filing his DFEH charge on August 29, 2017 on Bishop's first, second, third, and fourth causes of action*

For the first through fourth causes of action asserted in the TAC, SC further argues that Bishop's failure to file his DFEH charge within one year of the alleged wrongful conduct also requires dismissal for failure to exhaust administrative remedies. As noted, at all relevant times FEHA required that an administrative charge be filed with DFEH within one year of the alleged wrongful conduct. *See Wyatt*, 2019 WL 4014082, at *4. In light of that requirement, "[a] plaintiff suing for violations of FEHA ordinarily cannot recover for acts occurring more than one year before the filing of the DFEH complaint." *Jumaane v. City of Los Angeles*, 194 Cal. Rptr. 3d 689 (Cal. Ct. App. 2015). Further, it is the "plaintiff's burden to plead and prove the timely filing of the DFEH complaint." *Id.* Once the defendant has asserted failure to timely file a DFEH charge as a defense it becomes the plaintiff's burden to prove that his claims are timely under the continuing violations doctrine. *See id.*

SC contends that Bishop cannot recover on the first through fourth causes of action asserted in the TAC because the alleged relevant conduct occurred more than one year

---

charge filed with DFEH names SC as Bishop's former employer and no administrative charge filed with DFEH timely asserted conduct that forms the basis for the TAC's first through fourth causes of action. At bottom, SC's memorandum does not raise failure to file suit in *court* within the applicable limitations period as grounds for dismissal of any of Bishop's FEHA-based claims. Federal courts do not ordinarily entertain arguments raised for the first time in reply, and the Court declines to do so here. *See Redking Foods LLC v. Minn Assocs. LP*, No. 13-CV-0002 (PJS/JSM), 2014 WL 754686 at *4 & n.4–n.5 (D. Minn. Feb. 26, 2014) (collecting cases).

before he filed his DFEH charge. The four causes of action implicated by this argument are: (1) harassment;[7] (2) failure to engage in interactive process in violation of Cal. Gov't Code § 12940(n); (3) failure to make reasonable accommodation in violation of Cal. Gov't Code § 12940(m); and (4) failure to take all steps reasonably necessary to prevent discrimination and harassment from occurring in violation of Cal. Gov't Code § 12940(j) & (k).

a.   <u>Bishop's claims for harassment and failure to take all steps reasonably necessary to prevent discrimination and harassment under FEHA.</u>

The TAC's first cause of action asserts a claim for harassment against SC under FEHA. Its fourth cause of action asserts that SC failed to take all steps reasonably necessary to prevent discrimination and harassment under FEHA. (*See* TAC at 15, 19–22.)[8] The Court understands the fourth cause of action to plead two claims: one for failure to take all steps reasonably necessary to prevent discrimination and another for failure to take all steps reasonably necessary to prevent harassment.

---

[7] The TAC's first cause of action is titled "harassment" and omits the paragraph of the First Amended Complaint that alleged that Basnight violated Cal. Gov't Code § 12940(j). Because California courts do not recognize a common law tort of harassment and Basnight has been dismissed from the case, the Court construes this as asserting a FEHA harassment claim. *See McCree v. Cal. Dep't of Conservation*, No. 12-CV-04127-JST, 2014 WL 1936504, at *6 (N.D. Cal. May 14, 2014).

[8] The TAC also asserts a claim for discrimination against SC under FEHA in its sixth cause of action, but SC does not contend that conduct relevant to this claim is occurred outside of the applicable one-year period.

FEHA prohibits both harassment and discrimination but distinguishes between them. *See Landucci v. State Farm Ins. Co.*, 65 F. Supp. 3d. 694, 705 (N.D. Cal. Aug. 12, 2014). Harassing acts consist of "conduct outside the scope of necessary job performance . . . because of meanness or bigotry, or for other personal motives." *Id.* (quoting *Reno v. Baird*, 957 P.2d 1333, 1336 (Cal. 1998)). In general, harassment under FEHA "focuses on situations in which the *social environment* of the workplace becomes intolerable because the harassment (whether verbal, physical, or visual) communicates an offensive message to the harassed employee." *Roby v. McKesson Corp.*, 219 P.3d 749, 761 (Cal. 2009).

Discriminatory acts, on the other hand, "arise out of the performance of necessary management duties" and include "commonly necessary personnel management actions such as hiring and firing, job or project assignments, [and] office or work station assignments," among others. *Reno*, at 1336 . While some personnel management decisions may be actionable as harassment under FEHA—for example, "when [such] actions convey an offensive and hostile message to the employee"—in general personnel management decisions based on discriminatory motives constitute actionable discrimination, not harassment. *Landucci*, 65 F. Supp. 3d at 706. As the Supreme Court of California explained in *Roby*, "some official employment actions done in furtherance of a supervisor's managerial role can also have a secondary effect of communicating a hostile message" and "[t]his occurs when the actions establish a widespread pattern of bias." *Id.* at 764.

18

FEHA also "makes it unlawful for an employer to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." *Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 804 (N.D. Cal. 2015) (quoting Cal. Gov't Code § 12940(k)) (cleaned up).

The TAC pleads no actionable acts of harassment occurring within one year of the August 29, 2017 DFEH charge. The only conduct that could be construed as affecting the social environment of the workplace occurred on August 22, 2016—the evening of the confrontation between Bishop and Basnight. It is questionable whether Basnight's acts that evening rise to the level of harassment under FEHA, as under California law "an employee generally cannot recover for harassment that is occasional, isolated, sporadic, or trivial." *Lyle v. Warner Bros. Television Prods.*, 132 P.3d 211, 223 (2006). In any event, the TAC pleads no actionable acts of harassment—as distinguished from acts of discrimination—occurring within one year of the date that Bishop filed is first DFEH charge.

The Court is unpersuaded by Bishop's argument that the continuing violations doctrine saves his harassment and derivative harassment claims. At least one act must occur within the one-year period prior to filing of the DFEH charge in order for the continuing violations doctrine to apply. *See Trovato v. Beckman Coulter, Inc.*, 121 Cal. Rptr. 3d 330, 336 (Cal. Ct. App. 2011). Here, Bishop has not alleged any conduct relevant to his harassment claim occurring within the relevant one-year period.

However, not all conduct relating to the derivative discrimination claim falls outside the applicable one-year period. An improper discharge is an actionable discriminatory act under FEHA. *See Romano v. Rockwell Int'l, Inc.*, 926 P.2d 1114, 1122 (Cal. 1996). And "[t]ermination from employment is an injury sufficient to support recovery under a section 12940(k) failure to prevent discrimination claim." *Achal*, 114 F. Supp. 3d at 804. The one-year period to file a DFEH charge is measured from the actual date of the discharge, not the date that the plaintiff knew that he would be discharged. *Id.* at 1123. It is undisputed that Bishop's last day of work at SC was August 31, 2016. Accordingly, at least one allegedly discriminatory act occurred within one year of Bishop's filing of his DFEH charge.

b.   Bishop's claim for failure to engage in the interactive process under FEHA

Bishop's second cause of action asserts a claim for failure to engage in the interactive process under FEHA. FEHA makes it unlawful:

> For an employer or other entity covered by this part to fail to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental disability or known medical condition.

Cal. Gov't Code § 12940(n). The employer's obligation to engage in the interactive process "arises once the employer becomes aware of the need to consider an accommodation." *Chisolm v. 7-Eleven, Inc.*, 383 F. Supp. 3d 1032, 1057 (S.D. Cal. 2019) (quoting *Scotch v. Art Inst. of Cal.*, 93 Cal. Rptr. 3d 338, 361 (Cal. 2009)). And an employer may be held liable

under section 12940(n) only if a reasonable accommodation was possible. *See Nadaf-Rahrov v. Neiman Marcus Grp., Inc.*, 83 Cal. Rptr. 3d 190, 216 (Cal. Ct. App. 2008).

The TAC pleads that Bishop requested that Basnight allow him to return to his hotel room on the evening of August 22 because he was suffering from significant pain attributable to his condition and that Basnight denied that request. The cause of action it asserts for failure to engage in the interactive process refers only to Basnight's alleged failure to "provide reasonable accommodation(s) to [Bishop] which was requested by [Bishop] in the form of being able to return to his hotel room." (TAC ¶ 52.) The TAC mentions no other request for accommodation.

The Court finds that the TAC pleads no acts giving rise to a failure to engage in the interactive process claim that occurred within one year of Bishop's August 29, 2017 DFEH charge. The continuing violations doctrine cannot save this claim. *See Trovato*, 121 Cal. Rptr. 3d at 336. Thus, dismissal of the TAC's second cause of action is proper.

c.   Bishop's claim for failure to make a reasonable accommodation under FEHA.

Bishop's third cause of action asserts a claim for failure to make a reasonable accommodation under FEHA. FEHA makes it unlawful for an employer "to fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee." Cal. Gov't Code § 12940(m). "The elements of a reasonable accommodation cause of action are (1) the employee suffered a disability, (2) the employee could perform the essential functions of the job with reasonable accommodation, and (3) the employer

failed to reasonably accommodate the employee's disability." *Nealy v. City of Santa Monica*, 184 Cal. Rptr. 3d 9, 19 (Cal. Ct. App. 2015).

The Court finds that the TAC pleads no acts giving rise to a failure to make reasonable accommodations claim that occurred within one year of Bishop's August 29, 2017. Again, the only accommodation the TAC alleges that SC did not provide was permitting Bishop to return to his hotel room undisturbed on August 22, 2016.[9] It contains no other allegations indicating that SC failed to reasonably accommodate Bishop's disability. The continuing violations doctrine cannot save this claim either. *See Trovato*, 121 Cal. Rptr. 3d at 336. Thus, dismissal of the TAC's third cause of action is proper.

**B.**   *Timeliness of the Wrongful Termination Claim, Asserted in its Fifth Cause of Action*

SC argues that Bishop's common law wrongful termination claim is time-barred because he did not file the TAC within two years of his discharge and the TAC does not relate back to the complaint filed on August 15, 2018. A two-year limitations period applies to a common law cause of action for wrongful termination in violation of public policy. *See Prue v. Brady Co./San Diego*, 196 Cal. Rptr. 3d 68, 79 (Cal. Ct. App. 2015). Because Bishop filed the TAC on January 21, 2020, more than two years after his termination, his common law wrongful termination claim is untimely unless it relates

---

[9] As SC notes, the TAC also pleads that Bishop also informed Basnight that he required certain restrictions on time spent traveling, but it is devoid of any allegations that SC failed to accommodate that request. (*See* SC Mot. to Dismiss Mem. at 20 (citing TAC ¶¶ 19–20).)

back to the date he filed his original complaint. *See, e.g., James v. Tempur Sealy Int'l, Inc.*, No. 18-CV-07130-SI, 2019 WL 176340, at *3 (N.D. Cal. Jan. 11, 2019) (dismissing claim for wrongful termination brought more than two years after plaintiff's termination date).

Rule 15(c)(1)(C) of the Federal Rules of Civil Procedure provides the circumstances in which an amendment changing the party against whom a claim is asserted relates back to the date of the original pleading.[10] Fed. R. Civ. P. 15(c)(1)(C). In relevant part, Rule 15(c)(1) provides that an amendment changing the party against whom a claim is asserted relates back when three requirements are satisfied:

> (1) the claim or defense asserted in the amended complaint arises out of the same conduct, transaction, or occurrence set out in the initial complaint, (2) within 90 days after the original complaint was filed, the party to be added 'received such notice of the action that it will not be prejudiced in defending on the merits,' and (3) upon receiving notice, the party to be added 'knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.'

*Heglund v. Aitkin Cty.*, 871 F.3d 572, 578–79 (8th Cir. 2017) (quoting Fed. Ri. Civ. P. 15(c)(1)(C)). It is undisputed—and the Court agrees—that the first requirement is satisfied here because the TAC is substantially similar to the complaint Bishop filed in California state court. *Compare* TAC *with* ECF No. 1-2. Nor does SC dispute that it received notice of the action within 90 days after the original complaint was filed.

---

[10] The Court finds persuasive the reasoning of the court in *Anderson for Anderson v. City of Minneapolis*, No. 16-CV-4114 (SRN/FLN), 2018 WL 1582262 (D. Minn. Mar. 30, 2018) that under Eighth Circuit law federal law controls the issue of relation back, even though this is a diversity case, as there is no indication that the federal rule is more restrictive than the state rule. *Id.* at *12 & n.12.

But SC contests whether the third requirement is satisfied, arguing that Bishop's decision to sue Abbott rather than SC was the result of a deliberate strategic choice and not a mistake. (*See* SC Mot. to Dismiss at 22.) The Supreme Court in *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538 (2010) explained that "making a deliberate choice to sue one party instead of another while fully understanding the factual and legal differences between the two parties is the antithesis of making a mistake concerning the proper party's identity" for purposes of Rule 15(c)(1)(C). *Id.* at 549. In contrast, a plaintiff who is aware of the existence of two parties but misunderstands the roles that each party played in the conduct that gave rise to her claim has made a mistake within the meaning of Rule 15(c)(1)(C). *Id.*

Taking the factual allegations in the TAC as true, as it must, the Court finds that Bishop made a mistake as to the proper party's identity within the meaning of Rule 15(c)(1)(C). The TAC pleads that, after learning that Abbott acquired SC's former parent company, Bishop believed that Abbott became his former employer as a result of the merger. He allegedly did not understand the legal relationships between the Abbott, SC's former parent corporation, SC's current parent corporation, and SC. Such a failure to understand the factual and legal differences between corporations constitutes a "mistake concerning the proper party's identity" under Rule 15(c)(1)(C)(ii). *See Osorio v. Minneapolis Hotel Acquisition Grp.*, LLC, 335 F. Supp. 3d 1141, 1145 (D. Minn. 2018) (holding plaintiff who sued corporation mistakenly believing it had acquired the

liabilities of the proper defendant satisfied the "mistake" prong of the Rule 15(c)(1)(C) analysis); *Myers*, 701 F. App'x at 589 (holding plaintiff who failed to correctly identify her employer for purposes of FEHA satisfied the "mistake" prong of Rule 15(c)(1)(C) analysis).

The Court is not persuaded by SC's arguments to the contrary. SC contends that it "did not have any information that it would have been named in this lawsuit but for a mistake in identity" by Bishop because Bishop "clearly knew all along [SC] was his employer." (SC Reply Mem. at 11–12.) But the record before the Court does not indicate that Bishop made a deliberate choice to sue SC knowing that SC was his employer. Rather, the allegations in the TAC indicate that Bishop made a mistake as to the factual and legal differences between Abbott and SC.

In sum, the Court concludes that Bishop's common law claim for wrongful termination in violation of public policy is not untimely because the TAC relates back August 15, 2018.

### C.      *Duplicative Nature of Request for Declaratory Relief*

SC also raises various grounds for the dismissal of Bishop's seventh cause of action. Among other things, SC argues that it is duplicative of Bishop's other FEHA claims and therefore subject to dismissal.

The Court agrees. At bottom, Bishop's claim for declaratory relief seeks a declaration that SC has violated FEHA. In the Court's view, the TAC's seventh cause of

action seeks a declaratory judgment duplicating the allegations that the TAC pleads in essentially all of the other claims it asserts under FEHA. Thus, it is entirely superfluous and subject to dismissal. *See Thunander v. Uponor, Inc.*, 887 F. Supp. 2d 850, 878 (D. Minn. 2012) (dismissing plaintiff's declaratory judgment count as duplicative of the plaintiff's other claims).

## II.   SC's Motion to Strike

SC also moves to strike paragraph 41 of the TAC under Rule 12(f). Rule 12(f) provides that courts "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The Eighth Circuit has explained that, although district courts enjoy "liberal discretion" to do so, striking a party's pleading "is an extreme and disfavored measure." *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007). There is general agreement that motions to strike "should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action." 5C Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1382 (3d ed.); *see, e.g., Williams v. Hawkeye Cmty. Coll.*, 494 F. Supp. 2d 1032, 1043 (N.D. Iowa 2007) (denying motion to strike where movant did not explain why allegations in pleadings where immaterial or impertinent or show that their continued presence would prejudice him).

SC contends that paragraph 41 of the TAC contains irrelevant and immaterial matter. The Court agrees. "A matter is immaterial or impertinent when not relevant to the resolution of the issue at hand." *McLafferty v. Safeco Ins. Co. of Ind.*, No. CIV. 14-564 DSD/SER, 2014 WL 2009086, at *3 (D. Minn. May 16, 2014). Paragraph 41 alleges that counsel for SC has always maintained that it is Bishop's employer for purposes of FEHA. (TAC ¶ 41.) And that it first took "legal action on the issue of" the identity of Bishop's employer when it filed a Rule 12(c) motion for judgment on the pleadings in June 2019. (*See id.*) These allegations are irrelevant to disposition of the claims asserted in the TAC; determining whether the allegations in paragraph 41 are true or false would have no bearing on the outcome of this case.

But the Court will deny SC's motion to strike because SC makes no attempt to demonstrate how including paragraph 41 of the TAC is prejudicial to it. Thus, the Court declines to grant the extraordinary remedy of striking paragraph 41 from the TAC.

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. SC's motion to dismiss and motion to strike (ECF No. 84) is GRANTED IN PART AND DENIED IN PART consistent with this ORDER;

   a.   Counts I, II, III, and VII against SC are DISMISSED WITH PREJUDICE; and

      b.     To the extent Count IV asserts SC failed to take all reasonable steps necessary to prevent harassment from occurring in violation of Cal. Gov't Code § 12940(k), it is DISMISSED WITH PREJUDICE.

Dated: July 29, 2020                BY THE COURT:

                                    <u>s/Nancy E. Brasel</u>
                                    Nancy E. Brasel
                                    United States District Judge